2-22-0217, LNL 4EVER, LLC, Plaintiff-Appellant v. Glendon L. Miller, 3-Time Collector, 2-22-0217, Joseph J. Curio, a Kennewick County Clerk in his official capacity, City of Crystal Lake, U.S. Bank, Defendants' Appellees. Arguing for the appellant, Mr. Lars M. Kesha. Arguing for the appellee, City of Crystal Lake, Mr. Victor P. Pellini. Arguing for the appellee, U.S. Bank, Mr. Nathan Coppola. All right, gentlemen, are you both ready to proceed? Yes. Okay, and counsel, are you ready? Good morning. Good morning. I am here representing LNL 4EVER, LLC, which is a property tax purchaser who purchased 15 parcels of property within Special Service Area 45 in the City of Crystal Lake. Those purchases were made between 2015 and 2021. It is noteworthy that the first purchase was made in 2015. Can I ask you this? What's the relevance of the fact that the Special Service Area has not been developed as intended? What's the relevance of that? I'm sorry. What's the relevance of the fact that the Special Service Area has not been developed as intended or as planned? How is that relevant? Back in 2006, the Special Service Area was created by the City of Crystal Lake. The relevance is that Special Service Area was created to assist a private developer in developing that land within Special Service Area 45. In order to assist that developer, the City of Crystal Lake needed to finance infrastructure, streets, lights, excavation, sewer system, and so on. They did that through the issuance of Special Service Area bonds. I know that. I'm talking about your client's position. Your client took the land or purchased the land knowing all of this. My client purchased the land knowing that there was a Special Service Area. That is correct. Why shouldn't the five-year statute of limitations apply when he knew or your client knew? I forget if it's an LLC. Right. Who's the individual again? My client knew that at the time he purchased these parcels, all 15 of them, at a tax sale, that the parcels were subject to Special Service Area tax 45. And he moved forward. He saw this as an investment on his part. Ultimately, he could not pay those taxes. Right. Let me just, again, go ahead. You can finish with that thought. Ultimately, he could not pay those taxes. Of course, as we know from the record, the trial judge ruled that the five-year statute of limitations apply. The Special Service Area was created in 2006. Five years expires in 2011. Therefore, when my client first started his purchase in 2015, he's beyond the statute of limitations. What my client did not know, and nobody did, was that the statute of limitations started in 2006. There was never any statute that said that. There has never been any court decision, at least in Illinois, that has said that. Well, there is a statute. The statute is Section 13205, which if there's not a specific statute, the general statute applies. And that's the law. Right? It is. However, so my next point question is this. One of the most stable areas of the law is property law. And isn't it a generally accepted principle that a purchaser who buys land takes it with the conditions that are attached to the land, whether it be a lease, an easement, imposition of taxes, or a Special Service Area tax? That is true. Okay. I have no disagreement with any of those principles. Well, where are we going here? Which is to basically the trial – I would have used an oval, but the trial court asked those questions. However, my client was not aware of what the statute of limitations was. But he's chargeable with knowledge of the law, as we all are. There was no court decision, no statute, nothing to indicate that the five-year statute of limitations applied to this challenge of the Special Service Area. Nobody has challenged the Special Service Area that I'm aware of in any report decision. With regard to the – there's no argument that the statute wasn't followed in approving the Special Service Area, the conditions that are required, correct? No. Mr. Filippini makes the argument that Crystal Lake followed the proper constitutional and statutory provisions and set up the Special Service Area. We agree with that. We never challenged the initiation of the Special Service Area. We challenged the application of it because what it was envisioned was to be – all of these parcels were to be divided among the individuals or entities that purchased land within Special Service Area 45. But very little people – very little numbers of individuals and entities purchased anything. The land was never really subdivided. And my client didn't know that, okay? Should he have known that? I'm sorry, I didn't hear you. Should – pardon me. Should he have known that when he purchased the property? My client probably could have assumed that, correct. But the Special Service Area never developed as envisioned by Crystal Lake. I appreciate that, Matt, and there's no dispute about that. But your client would have known that every time he bought new parcels of land. He probably did know that, yes, Your Honor. Again, I quote my colleague here, why are we here? Because the Special Service Area tax has not developed as originally envisioned by the City of Crystal Lake. The initial purpose was it was to be divided among the individual property owners who purchased land within Special Service Area 45. For either economic reasons or other reasons, the Special Service Area did not develop as intended. And because of that, the Special Service Area tax has become so excessive that it encompasses 95% or more of the annual real estate tax bills that are received by my client. It almost sounds like what your client has is buyer's remorse. I mean, he bought it on the assumption, I assume, if you went to look at the property, there were no streetlights, there were no sewers, there were no streets. So he knew that when he bought it. The original intent was never carried through. So now he's stuck with this land that has a tax on it, a tax rate that he knew existed when he purchased the property. And when he went and purchased more property. That's correct. He purchased his properties between 2015 and 2011. I want to characterize this buyer's remorse. As I said, he has an investment purpose in doing this. He wanted to sell this to a developer who could probably bring it back to its original use of being a commercial or residential development. And frankly, he's been unable to do that because potential buyers look at this situation and they see the extraordinary SSA tax and they back away. So he is boarded with this property. Buyer's remorse I don't think applies because he did have purposes that he wanted to fulfill that are just not coming to fruition because of the excessive taxes. As I said in response to Justice Burkett's question, my client may have known and probably did know about the special service area tax at the time he purchased these properties at a tax sale. However, he did not know and nobody knew of what the set of limitations was to challenge that special service area. Counsel, can I ask a question? Has there been any change in circumstance or the behavior of the taxing authority since the purchase by your client of these lots? Again, I'm sorry. I cannot hear you. Is there any change in circumstance that occurred since the purchase of each of the individual lots? Is there any action on behalf of the taxing body, for example, that would warrant extension or tolling of the statute? Is there any change in circumstances since the time of the purchase at the tax sale? No. My client has tried repeatedly to try to sell these lands. He's been unable to do that because people are scared because of the extraordinary taxes. So, no, there's no change in circumstances. He has not paid the taxes either, though, correct? Right. There was a hope that there would be a change in circumstances. But what's the excuse for not paying the taxes? Well, right now, if a buyer came along and had the sufficient financial resources to buy these properties, my client would certainly sell them. But right now, there are not many people who are willing to purchase. No, but why is he not paying the taxes? I'm sorry? I thought your client's not paying the taxes, correct? My client is not paying the taxes simply because of financial reasons. He cannot afford it. It's not a decision that he refuses to pay the taxes. I mean, we all need to pay our taxes, obviously. But my client just does not have the financial resources. And I'll leave it at that. That's quite simply the bottom line for my client. The parties agree on a few things here. And one is that the standard of review is de novo, and that the trial judge's ruling is not entitled to any deference by this court. The parties also agree that the statute of limitations that applies is five years. Most importantly, in ruling on a 619 motion, the court must accept as true all rule-of-play facts in the plaintiff's complaint and draw any reasonable inferences therefrom. And there's an underlying principle that, based on decisions of the Illinois Supreme Court and the Appellate Court, that the property tax code encourages buyers of tax sales because it increases the collection of property taxes, increases revenue for governmental entities. So, in other words, tax-sale purchasers are necessary to maintain the tax collection process. In this particular situation, as a result of the trial judge's decision, tax-sale purchasers would not have an incentive to obtain tax-delinquent properties involved in a special service area. They would essentially become just poison for a tax-sale purchaser. In our sub-issue A, we raise the point that, because we have alleged constitutional claims under the Illinois Constitution, that there is a deprivation of due process of law, and the statute of limitations does not apply. The Keystone- The case law that says the statute of limitations does not apply because the plaintiff has a constitutional challenge? Yes. It doesn't apply? What's the case law that says that? The Keystone-Montessori school decision, Your Honor, which I believe was from the First District, involved a situation where the school had to agree not to pursue a school tax exemption for the property within the suburban municipality that I think was River Forest. And Keystone School challenged that. They said that that violated the Illinois Constitution. Crystal led Price to make the argument that there was a distinction between a facial constitutional challenge and a supply challenge. But the Keystone decision, as I recall, did not draw that distinction. It said there's a violation of the agreement between the school and the suburban municipality based on the Illinois Constitution's educational clause that educational properties are exempt from taxation. We are trying to do it by analogy as well and say that LML is relying on the due process clause of the Illinois Constitution to claim that the extraordinary SSA taxes are a violation of the Illinois Constitution. Both of these relate to the Illinois Constitution. In submission B, we claim that if the five-year statute of limitations applies, it did not accrue until 2016 because that is when my client LML received his first annual real estate tax bill. But he stepped into the shoes of the seller and whatever ran with the land, correct? Well, he received tax bills ever since 2016 up to the present. But he knew when he purchased that he was covering his estate. That is correct. I do not disagree with that. How does traditional interpretation of property law not apply that the statute begins to run when he purchases the land? The trial judge ruled that the set limitations accrued in 2006 at the time of the creation of the special service area. Our position is... I meant to say the creation of the special service area, the date that it's created. Just like a lease, the date that the lease, even though you don't own the land yet, the statute of limitations begins to run with the creation of the lease. When a tax home purchaser is successful, the prior taxes on their property are zeroed out or wiped out. He did not receive his first annual real estate tax bill until 2016. He had no standing to challenge anything prior to his purchase. Standing has nothing to do with the statute of limitations. You purchase the land. You take the land with what runs with the land, which includes the taxes that are going to be applied. That is true. So this is just so you can bring this to action? Our position is the statute of limitations did not accrue until 2016 when he received the first real estate tax bill. Obviously, he knew he was going to receive real estate tax bills, but it doesn't start until he actually is a successful purchaser at the tax sale. I believe my time is coming to a close. You will have an opportunity for a reply. Thank you very much. And, counsel, have you agreed as to how you will both split your time? We have. Okay. Then you may proceed when you're ready. May it please the Court. I'm Victor Filippini from the Filippini Law Firm. I'm here for the appellee, City of Crystal Lake. L&L has brought this action, claiming that the taxes from the City's Special Service Area 45, SSA, I may say from time to time, are too high. That claim is remarkable on several levels. First, the SSA taxes were actually part of the reason why L&L got the property in the first place. L&L, as a tax purchaser, was able to acquire the property because taxes weren't paid, including the SSA 45 taxes. So to have benefited from those taxes by acquiring the property, it's remarkable that L&L now objects to the taxes now that it's its obligation to pay. Moreover, unlike many taxes where you don't know the full amount of taxes until they're actually levied, these taxes were levied in 2006 as part of the bond ordinance. And so when L&L acquired this property in 2015, they knew exactly what the taxes were going to be for SSA 45. There was no surprise. Third, all actions relating to SSA 45 happened in 2006. Nothing happened between then and now. It was the fact that L&L brought this action in 2021 to challenge a tax levy in 2006 that caused the trial court to dismiss L&L's complaint on the statute of limitation grounds. The trial court, of course, was right. But the city's motion to dismiss, as we also set forth in our appellee's brief, set forth a whole other menu of bases on which this court could rule and still find that the complaint should be dismissed. Let me try to go through most of those in the time I have allotted. First, the statute of limitations. L&L brought this action in 2021. They've agreed that there's a five-year limitation period. The SSA taxes were all levied in 2006. That's 15 years. Simple math tells us that they didn't meet the statute of limitations. The complaint, they have tried to assert several arguments to avoid the statute of limitations. One, which you just spoke with Mr. Kashuk about, was, well, it was a constitutional claim. Constitutional claims, when they are as applied challenges, as admittedly from the L&L side, this claim is, are always subject to statutes of limitation. In fact, if you think about it, every zoning case usually boils down to, where cell factors are out there, those are tools for figuring out substantive due process challenges. And so there is a fundamental constitutional issue at stake. And yet, in Illinois, now a zoning claim has to be brought in 90 days. The five-year limitation period in this instance is quite generous by comparison. The fact that it's a constitutional claim doesn't matter. If this were a facial challenge, and that was the issue in the Keystone case, and while they didn't say specifically facial challenge, the determination was that the contract under which the Montessori school was operating was void ab initio. That's code for a facial challenge. And in that instance, the court said, we're not going to apply a statute of limitations because it is void ab initio, i.e., a facial challenge. So, counsel, why is this not a facial challenge? I'm sorry, counsel. Why is this not a facial challenge? Several reasons. First, they've admitted it's not a facial challenge. Second, they've identified nothing that makes the actions of the City of Crystal Lake in establishing special service area 45 inconsistent with the underlying authority for doing so. Keep in mind, a special service area is permitted expressly for home rule municipalities like the City of Crystal Lake in the Illinois Constitution. Only the procedures are something that are bounding what a home rule city can do with a special service area. In this instance, the statute, which is 27-5 of the Illinois Property Tax Code, specifically sets out procedures for which a special service area has to follow to be established. There's been no challenge to that area. It's kind of an off topic, but when do the bonds mature? Well, they have been maturing annually, and they finished their maturity schedule in 2029. Are we ever going to get there? Are the investors ever going to get their money back? My guess is that they will not get all of their money back. And that's contemplated with the... That is a risk of a bond. That is baked into the interest rate of those bonds. And actually, we're probably going to experience that at a national level. Yeah, I suspect that they're going to say that. I think we hear that so at Home Bank was kind of caught in the switches there with the interest rates being as they are. So this was not a facial challenge by any stretch. This was always based on what happened here. So it is definitely an as-applied challenge. Now, the novelty of L&L's argument turns out on their... is on their as-it-turns-out challenge. It's because this resulted in a colossal failure that it became unconstitutional. It wasn't unconstitutional when it was established. It wasn't unconstitutional when the bonds were sold. It became unconstitutional because it was a colossal failure. Well, on a practical level, the SSA taxes are there to repay a debt for monies that were received from the bondholders. And that debt and the contract to repay that debt exists whether an SSA is a rousing success or, as L&L claims, a colossal failure. But ultimately, if you think about it from a legal perspective, what this colossal failure argument says is that failure is unconstitutional. And to that, I think, huh. But beyond that reaction, L&L's theory that a colossal failure of a program that a legislative body adopts makes it unconstitutional would be an earth-shaking separation of powers issue. So, counsel, let me just pose a hypothetical. Let's say the taxing authority sets up the SSA district for a general purpose, which is to develop property. There's a bond to pay for the development. But let's just say, hypothetically, there's no intent whatsoever to actually develop it. It's a boondoggle. There's a conspiracy. Whatever facts you want to throw in there. Let's assume the worst, and let's set aside subsequent purchaser issues. What remedy does the landowner have under those type of circumstances? So, obviously, you have the statute in place allowing for the formation for this purpose. But let's just say it's, hypothetically, a fraudulent purpose. There's no intent to actually develop. A couple layers here, Judge. First, with respect to some kind of fraud, there'd be a fraud claim. And there would also presumably be a challenge because a legislative body is required to follow the statute. If they didn't follow it for a proper purpose, that would also be a basis for it. But even in those circumstances, there's a statute of limitations. You can't bring a fraud claim forever. There is a time limit for fraud claims. So, again, I think that would probably fall under the two-year limitation period because it's a tort. And there'd be a discovery issue and all those types of things as to when it would be done. A discovery rule totals the statute. Right. But I would say that there is a cause of action that could be had. But even then, the cause of action is bounded in time by statute of limitation that would ever apply to the nature of the cause under which the challenge were brought. So, going back to the purpose, the first thing brought up in the plaintiff's argument here is about the purpose of the SSA. Can you explain what the purpose was here? Certainly. The SSA is set out in the SSA establishing ordinance and the bond ordinance  It was kind of a mixed use. Right. Part of it, there were several phases. There were, I think, two residential phases and one commercial phase. And the first residential phase went off well. You know, if you put yourself back on that time clock here, this happened in 2006. 2008 was the Great Recession, and that was really the precipitating event that prevented this development plan from being fully achieved. And, you know, it's a hard thing for sometimes to correct for that type of unexpected and significant change in an economic condition. But that doesn't make it unconstitutional. I would add that, you know, the issue of whether something is a failure or not, if that, in fact, is a constitutional issue for the courts to bring, then suddenly you are being asked to judge the efficacy of legislative decisions. You have millions of opinions that say that is not our job, and it isn't here. LNL also argues that the taxes, when they first received a tax bill, is when the statute of limitations starts to trigger. You may recall that just, I think it was three years ago, this court heard the Supermix case. And in that case, there was an argument that, oh, well, there was an easement from the 1940s, but it wasn't until 2015 that we realized that this was going to be a problem for us, and so we want to challenge the validity of the easement. And the court said, no, it's when the easement was established that the limitation period starts to run. And it doesn't get retriggered because there's a change in ownership. That principle applies absolutely fully here. We cited Craddoville on real estate in that. I'm sorry? We cited Craddoville on real estate in that. Has the law changed at all since then? It has not. As Your Honor suggested earlier, some of these are bedrock principles of real estate law, and they have not changed. And as a result, you know, there is certainly novelty to the theory that LNL has presented, but novelty doesn't make it right, and it certainly doesn't make it right here. The last issue that they raise in connection with the statute of limitations is the continuing violation doctrine. And, again, we have no qualms about the doctrine, but it has no applicability here. The continuing violation doctrine relates to the violation of law and no effects from the initial violation. That's quoting the Feltmire case. And here, he says, we don't have any problems with what the city did. We're not challenging that. So there's not even the violation of law to give rise to the continuing violation doctrine. It simply doesn't apply here. So, in short, as to the statute of limitations, the SSA taxes were enacted in 2006. They presented an as-applied challenge that is subject to a five-year limitation period, and they're simply late. And there's not a legally cognizable exception that would give them an ability to move forward. But let's say we didn't play the statute of limitation card. Let's look at the property tax code under which the plaintiffs acquired the property. Section 2275 of the property tax code has some important language regarding the orders that enter the property tax claim. And what it says is that if you get an order giving you land or giving you title for property pursuant to a property tax, you are estopped from raising any claim that could have been raised by your predecessor in interest. The issue here as to the amount of taxes existed for the predecessors, which is part of the reason why they lost the land, and it applies equally to L&L. And because of that ability of the predecessors to raise this issue, L&L is statutorily barred by estoppel under the language of the law from raising this claim. Thank you very much. Thank you very much. Good morning. Good morning. May it please the Court. My name is Nathan Coco from the Mintz Levin Law Firm, and I'm here on behalf of U.S. Bank National Association as an indenture trustee. U.S. Bank is the indenture trustee for the bonds that were issued in 2006 and were sold to the public to fund these improvements as part of SSA 45. And the improvements included storm sewers, sanitary sewers, water mains, and other municipal infrastructure. There's been some suggestion that this SSA was a failure, and it is certainly true that the, I guess, aspirations for development in 2006 weren't realized because of the reason Mr. Filippini mentioned, which was we had a real estate collapse or crisis in 2008-2009, which certainly affected the economics of this project as intended. But the SSA itself, I want to emphasize to the panel, is not a failure. Phase one was completed with the funds that were provided by the bondholders, and even the other parcels that L&L, the appellant, purchased, were given storm sanitation and sewer sanitation as projected and as was anticipated as part of the SSA financing. The thing that I want to mention that really hasn't been discussed here, there's been a lot of discussion by the appellant about his client's, as an investor, real estate investor's expectations when it purchased these parcels in delinquent tax sales, but there really hasn't been discussion about the expectations of the bondholders, the public that bought these bonds, that financed these public improvements. As is typical with SSA financings of this type, the principal and interest payments due on the bonds is the result of the tax proceeds that are collected as part of the SSA taxing authority. And bonds that are issued as part of these projects have extraordinarily long maturities, oftentimes 20 to 30 years. And the investors that purchase these bonds, that are looking to collect their principal and interest back over a 20 to 30 year period, must have certainty about the validity of the financing structure and the taxes pledged in connection with the repayment of the bonds. And so my point is simply that the appellant's novel theory that the statute of limitations essentially doesn't apply for these financings is at odds with the structures of these facilities and could have a prejudicial effect on these financings going forward. Thank you very much. Do you wish to reply? Thank you. If Crystal Lake and U.S. Bank's position is adopted, we need to consider the consequences of that decision. And the consequence as it stands now is Crystal Lake is receiving zero revenue from SSA 45. Mr. Coco's bondholders are receiving zero interest on their bonds because nobody has paid taxes in SSA 45 for at least a few years. The properties have been forfeited. My client isn't paying taxes because he can't afford it. If we were to look at your argument and say, well, because of the consequences we should not apply the statute of limitations, how would that work out? Because that would be the argument in every case. It is, and I think we always need to consider the consequences of our decisions. Do we apply the statute of limitations? In our view, the statute of limitations either started in 2016. Again, the law is pretty clear on that point. Your client purchased the property with knowledge of the SSA, which would be the starting point, which is the creation of the SSA. So if we take that position, how would the consequences be relevant at all? If you take the position that my client had the statute of limitations begin in 2006, as the trial judge ruled, then my client's case is over. And what that means is his properties are eventually going to be forfeited because he can't afford to pay the real estate taxes. And it also means these gentlemen's clients are going to continue to receive zero revenue, and other entities such as school districts and forest preserve districts and so on. Counsel made the point about the separation of powers. That's a legislative area. We don't make policy. We don't. That is not for us to decide. We're looking at whether or not the statute of limitations applies and when it applies. That is correct. This court, as any court, does not make policy decisions. I'm making the argument that we need to consider the consequences, not necessarily from a policy standpoint, but from a judicial standpoint. And if we look at the consequences from a judicial standpoint, and my client is foreclosed from bringing any case against a special service area, then that means the special service area, which is in existence until 2029, another 18 years, well, it would be 18 years from 2011, when the trial judge felt that was the cutoff time for the statute of limitations. There'd be an 18-year time span where nobody can challenge the special service area. If there's... Well, there is no challenge to the compliance with the statute, and there hasn't been a challenge. Right. Right now, my client has never been a challenge. Somebody might bring a challenge, I don't know, next year or the year after, if my client finds about it. But they would be foreclosed as well. If there's a miscalculation of the tax, if there's a miscalculation of the valuation, if there's a miscalculation of the tax bill in some way, those individuals would never be able to bring an action against the special service area. Well, isn't the miscalculation a different argument? I mean, if it's miscalculated, there's a remedy for that. But you're challenging the very existence of a tax on this area. So I'm not sure how this... And I asked before, is there any change in circumstances, anything that would toll? I mean, your argument essentially has to be that the statute was tolled. Something other than your client's purchase tolled it. So you've made arguments here in your brief about the ongoing, essentially a recurring torque kind of theory. Why don't you expand upon that and explain what you're getting at there. I think you're referring to the continuous violation theory. Our position is there's a violation of the statute of limitations. Every year that my client receives a real estate tax bill with a special service area tax on that bill. That would have begun in 2015. It would continue every year thereafter until the tax comes to an end, which would be 2029, or until my client sells the property. And then the statute of limitations would start over again with respect to some other unknown purchaser. But the continuing violation theory does seem parallel, because that is the harm. The tax bill receipt is the harm to my client. It is not something that happened in 2006 when he was not even involved in SSA 45. Where's the statutory violation? I'm sorry? Where is the statutory violation that would precipitate a continuing violation? The statutory violation is in the Internal Revenue Code. I don't have the citation right off the top of my head, but I think it might be 35-27-75. I decided to be brief. So I will refer you to that, Your Honor. Okay. Do you have any further questions? Thank you for your time. Thank you for your argument. Gentlemen, your arguments were exceptional this morning. We appreciate them very much. And that you did those arguments in person, as you both requested. We will issue a written decision in due course, and we are adjourned for the day. Thank you.